UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

SHA-HEED RAHMAN
Plaintiff,

-against-                                                                23-CV-8168

CAPT. BALANOS #1903; OFFICER                          AMENDED COMPLAINT
ASENCEAU #17879; CAPT RUTHERFORD;
ASSISTANT WARDEN CHESTNUT
Defendants

------------------------------------------------------------x

## AMENDED COMPLAINT[1]

### I.  INTRODUCTION

1. Plaintiff in the above-caption action allege(s) as follows
2. Plaintiff brings this action seeking damages pursuant to 42 USC §1983, against the New York City Department of Corrections employees, executive and administrative staff, Correctional Officers and Correctional Supervisors on Riker Island in their individual and official capacity.
3. The court has jurisdiction over this action pursuant to 28 USC §§ 1331, 1341(a)(3), 1341(a)(4), a1367(a) and 42 USC §1983
4. Venue is proper in this District pursuant to 28 USC §1391

### II.  PARTIES

5. Plaintiff and was at all times relevant a herein a permanent resident of the United States and resides at:

Sha-heed Rahman
781 East 135th Street
Bronx, NY 10454

6. Defendants are as follows, sued in their individual and official capacity. Please note that Plaintiff does not know the identities of all Defendants and asks that the Court and Defense Counsel help Plaintiff identify the following Defendants:

Captain Balanos, OBCC, Shield number 1903

---

[1] This document was prepared with the assistance of the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the SDNY.

i

Captain Rutherford, OBCC

Officer Asenceau (spelling unknown), C95, OBCC Shield number 17879
*Short woman, spanish descent, A officer in C95 dorm 3 upper. Became B officer in OBCC. Short hair, Portion of tip of right pointer finger missing*

Captain Jane Doe
*With dreadlocks that she keeps wrapped, skinny, who prisoners call "trigger" because she is quick to spray, who later became the mess hall and OBCC captain*

Officer Wilson, Clinic Officer OBCC

Assistant Warden Chestnut, OBCC

John/Jane Doe Medical Staff
*Who refused to provide any treatment for Plaintiff's COVID-19.*

### III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Although there is a nominal Grievance Process at Rikers Island, the grievance process is unusable or was unusable to Plaintiff. Plaintiff was informed that staff complaints and his complaints about the use of pepper spray are non-grievable. To the best of Plaintiff's knowledge and belief, there is no grievance committee. The inmate grievance resolution committee was suspended during the COVID-19 pandemic and has not been reinstated in its original form; it now consists solely of correctional officers. Plaintiff filed grievances with 311 on each occasion. Plaintiff never received a disposition on any of his grievances.
8. The Office of Constituent and Grievance Services Inmate Statement Form (7101R) states that Staff complaints, complaints against Medical Staff, Requests for Accomodation, and Assault Allegations are non-grievable.

### IV.   STATEMENT OF CLAIM

9. On or about August 12th an incident occurred in the Mess Hall in Dorm 3 Upper where pepper spray was used in the poorly ventilated room. Plaintiff was subjected to pepper spray in close proximity despite having COPD and Asthma.

10. Plaintiff noticed an incident that was escalating and asked Captain Rutherford if he could leave Mess Hall before it was locked down and pepper spray was used. Captain Rutherford told Plaintiff "don't worry about it" and to "sit down" at the table he was assigned.
11. Plaintiff has medical permits that explicitly prohibit exposure to chemical agents because of his COPD and Asthma. The Officer, Asenceau (B officer who takes us to the mess hall), Captain Rutherford, Captain Balanos, and medical staff at C95, were all aware of this permit. When Prisoners receive a medical permit a copy is given to the dorm and to the patient. Plaintiff showed his medical permit to officer Ascenceau, and Captains Rutherford and Balanos on multiple occasions.
12. As Plaintiff predicted, the incident escalated. A prisoner was got into a heated argument with staff and the food servers. Staff told the prisoner to sit down, he refused. As a result Mess Hall was locked down and pepper spray was used before Plaintiff could leave.
13. After use of pepper spray, the air, the tables, and the food itself was contaminated with spray. Plaintiff complained to Captain Rutherford, Officer Ascenceau, and Captain Jane Doe, that his food and the table were contaminated with spray, that he was choking on the spray in the air, and asked for new food. Defendants Rutherford, Ascenceau and Doe all denied Plaintiff any accomodation, and told him again to sit down.
14. Plaintiff and other prisoners were all made to either eat the contaminated food that they were served or go hungry.
15. Later, Plaintiff was at a Inmate Liason Meeting with Assistant Warden Chestnut, various captains and other Deputy Wardens. Plaintiff brought up his concern about pepper spray contaminating the food, and officer's refusal to remove him and other sensitive prisoners from the mess hall. Assistant Warden Chestnut told Plaintiff that the spray was "just pepper" and that "it's not going to hurt you."
16. Following the pepper spray exposure, Plaintiff immediately requested medical attention from Captain Rutherford, Officer Ascenceau, and Captain Jane Doe due to breathing difficulties and exacerbation of his COPD and asthma symptoms. Plaintiff also called 311 to report this incident.
17. Despite this, medical care was denied initially, and Plaintiff was forced to endure the contaminated environment without proper decontamination procedures. This failure to decontaminate is consistent, in the mess hall, in Dorm 3 Upper, and in every dorm Plaintiff was in on Rikers Island. Officers spray with abandon, and never clean up or decontaminate the area.
18. Plaintiff left the mess hall and 15 minutes later saw Captain Balanos and asked if he could speak with her. Captain Balanos replied "no don't talk to me." Plaintiff then asked Officer Ascenseau to call the clinic because he couldn't breath and she told Plaintiff she wasn't going to call the clinic and to go sit down.
19. Plaintiff insisted that Captain Balanos speak to him, showing her his medical permit, and explaining that he was really hurting from his COPD and needed to see medical. Captain Balanos replied that the use of pepper spray does not necessitate medical treatment, ignoring Plaintiff's documented medical orders prohibiting such exposure.
20. As a result of Plaintiff's exposure to pepper spray and his ingestion of contaminated food, Plaintiff experienced significant respiratory distress, diarrhea, hemorrhoids, and acid reflux.
21. On August 15, 2023, Plaintiff, suffering from breathing problems due to COPD and asthma and was officially placed on the sick list. When the clinic puts a prisoner on the sick list that list is given to an officer who determines how and when prisoners get to the clinic. In this case the list was given to the Clinic Officer Wilson, or alternatively Officer John/Jane Doe.
22. Despite being on the sick list, Plaintiff was not taken to the clinic by Officer Wilson

23. Later that day, when Captain Balanos and Officer Asenceou completed their rounds in OBCC 3 Upper, Plaintiff asked to be taken to the clinic, stating that he was having trouble breathing. Plaintiff's request was denied by Officer Asenceau, who told him to "go sit down".
24. Plaintiff asked Officer Asenceau to speak with Captain Balanos about being taken to the clinic but was informed that Captain Balanos will not speak with detainees.
25. Plaintiff was not taken to the clinic and did not receive medical care for two days.
26. Plaintiff did not have access to an asthma pump during this time and was restricted to using his Trelegy once a day, or else he could seriously damage his lungs.
27. Plaintiff's symptoms worsened over the following days and Plaintiff needed to borrow albuterol from another detainee in order to keep breathing.
28. When Plaintiff was taken to the clinic days later, he was told to take Albuterol and Breo Ellipta.
29. Plaintiff did not receive a steroid treatment as recommended by his pulmonologist.
30. Plaintiff had previously been informed by his pulmonologist, that while Breo Ellipta is helpful in treating COPD, overuse- such as using it more than once daily- can lead to lung damage. Plaintiff's pulmonolgist has told him that when he experiences breathing issues related to his COPD and asthma he should go to the emergency room immediately.
31. As a result of the prolonged denial of treatment, Plaintiff developed a serious medical condition caused by a buildup of fluids in his lungs, making it difficult to breathe. This difficulty breathing makes walking up stairs or for more than 2 blocks laborious to this day.

### Denial of Medical Care: Failure to Provide COVID-19 Treatment for Chronic obstructive pulmonary disease (COPD) and Asthma Patient

32. On multiple occasions while detained at North Infirmary Command (NIC), Plaintiff was exposed to COVID-19 due to inadequate isolation procedures for infected detainees.
33. Plaintiff's initial request for a COVID test was denied despite him experiencing COVID symptoms after exposure to another detainee, Anthony Bellair, who tested positive for COVID-19 but was kept in the dorm for 6 days after testing positive.
34. When Plaintiff reported his COVID symptoms, the NIC clinic staff, John/Jane Does dismissed Plaintiff's symptoms stating that it was just a cold.
35. Due to the severity of his symptoms, Plaintiff insisted on doing a COVID blood test.
36. In or around November of 2023 Plaintiff was told that his blood test was positive for COVID-19.
37. Despite testing positive and exhibiting severe symptoms, including headaches, congestion, unquenching thirst, chills, and respiratory distress, on Plaintiff was denied proper medical care by John/Jane Does medical personnel at West Facility.
38. Roughly 4 days after testing positive for COVID-19 the plaintiff was finally isolated from the rest of the jail population. One of the officers draft officers commented to Plaintiff that it was dangerous that the jailhad not isolated Plaintiff up until this point.
39. John/Jane Doe Medical Staff instructed Plaintiff to drink water, but did not provide with any medical treatment for his COVID symptoms. The only care Plaintiff received was to sit in an isolated room for 6 days, experiencing chills, fever, diahrrea, and respiratory distress.
40. The lack of timely and appropriate medical care for COVID-19 exacerbated Plaintiff's health condition, leading to prolonged illness.
41. Plaintiff caught COVID-19 a second time in or about December of 2023, however Plaintiff was not isolated from other detainees.

42. Plaintiff's COVID exacerbated Plaintiff's COPD, and has lead to fears that his bouts with COVID could lead to more serious long term consequences.
43. Plaintiff demands **A TRIAL BY JURY**
44. Plaintiff asks for the following relief
    a. $2 million in Compensatory Damages


I, Sha-Heed Rahman declare under the penalty of perjury that the foregoing Is true and correct


Date: September 18, 2024

Respectfully submitted

Sha-Heed Rahman, Pro Se Plaintiff

4

September 18, 2024

Dear Magistrate Judge Tarnofsky,

In light of the Defendant's Motion to Dismiss, Plaintiff asks for leave to amend his complaint. If such leave is granted, Plaintiff asks that the attached Proposed Amended Complaint be deemed the operative complaint in this case.

Plaintiff also asks that the service deadline Officer Ascensceau be extended *nunc pro tunc,* and that Defendant's counsel identify the officer and other Doe Officials, based on the information given below, pursuant to Valentin v. Dinkins, 121 F.3d 72.

Officer Asenceau (spelling unknown), C95, OBCC Shield number 17879

*Short woman, Domincan descent, the A officer in C95 dorm 3 upper. Became B officer in OBCC. Short hair, Portion of tip of right pointer finger missing.*

Captain Jane Doe

*With dreadlocks that she keeps wrapped, skinny, who prisoners call "trigger" because she is quick to spray, who later became the mess hall and OBCC captain.*

John/Jane Doe Medical Staff

*Who refused to provide any treatment for Plaintiff's COVID-19.*

Thank You,

*[signature]*

Sha-Heed Rahman

Plaintiff

*Pro Se*